E-FILED; Howard Circuit Court
Docket: 5/30/2025 5:07 PM; Submission: 6/11/2025 5:07 PM
Envelope: 21596555

A.T., an individual proceeding under
an assumed name,
c/o
**Laffey Bucci D'Andrea Reich & Ryan**
**1100 Ludlow Street, Suite 300**
**Philadelphia, PA 19107**

       **Plaintiff**

     **v.**

**SEVENTH-DAY ADVENTIST CHURCH,**
**NORTH AMERICAN DIVISION, INC., a**
**Maryland corporation,**
Serve:
**The Corporation Trust, Incoporated**
**2405 York Road, Suite 201**
**Lutherville-Timonium, MD 21093-2264**

and

**NORTH AMERICAN DIVISION OF**
**SEVENTH-DAY ADVENTISTS, a Maryland**
**nonprofit entity or association,**
Serve:
**9705 Patuxent Woods Drive**
**Coumbia, MD 21046-1565**

and

**COLUMBIA UNION CONFERENCE OF**
**SEVENTH-DAY ADVENTIST, a Maryland**
**nonprofit entity or association,**
Serve:
**5427 Twin Knolls Road**
**Columbia, MD 21045**

and

**COLUMBIA UNION CONFERENCE**
**ASSOCIATION OF SEVENTH DAY**
**ADVENTISTS, INC., a District of**
**Columbia corporation,**
Serve:
**5427 Twin Knolls Road**

**IN THE CIRCUIT COURT FOR**
**HOWARD COUNTY, MARYLAND**

**Case No.: C-13-CV-000520**

| | |
|---|---|
| Columbia, MD 21045 | : |
| | : |
| | : |
| and | : |
| | : |
| MOUNTAIN VIEW CONFERENCE ASSOCIATION OF SEVENTH-DAY ADVENTISTS, a West Virginia corporation, Serve: | : |
| | : |
| | : |
| 1400 Liberty Street | : |
| Parkersburg, WV 26101 | : |
| | : |
| Defendants. | : |
| | : |

## COMPLAINT – CIVIL ACTION

Plaintiff, by and through her undersigned counsel, Laffey, Bucci, D'Andrea, Reich & Ryan, LLP, hereby brings the following Complaint in civil action before this Honorable Court and, in support thereof, avers the following:

## PARTIES

1.      Plaintiff A.T. is a citizen and resident of Pinellas Park, Florida. At all relevant times, she was a minor residing at Miracle Meadows School, Inc. (hereinafter "Miracle Meadows") in Salem, West Virginia.

2.      Plaintiff's name and address are not contained in this Complaint so as to protect her privacy and identity as she incurred injuries and damages of a sensitive nature as a result of the intentional and negligent acts and failures of Defendants outlined below while she was a minor. Information which would or could identify Plaintiff A.T. is not contained herein.  Plaintiff may be contacted through her counsel as outlined herein.

3.      Defendant, Seventh-Day Adventist Church North American Division (hereinafter "SDNA"), a nonprofit entity, is located in Silver Spring, Maryland, and North American Division

2

of Seventh-Day Adventists (hereinafter "NAD"). SDNA and/or NAD own, operate, promote, manage, supervise, support and/or control "more than 1,000 elementary and secondary schools and 13 colleges and universities,"[1] including, at all relevant times, Miracle Meadows. SDNA/NAD also "develop, implement, and publish school evaluation documents, policies, and procedures"[2] to receive, encourage, and promote enrollment at Miracle Meadows, as an SDNA/NAD education boarding school, and provides school evaluation documents, policies, and procedures for these schools, including Miracle Meadows. These parties and others constituted alter egos for purposes of their organizational structure in operating these schools.

4.    Defendant, Columbia Union Conference Association of Seventh-day Adventists, Inc. (hereinafter "CUCA") is a regional conference association of SDNA/NAD and a District of Columbia corporation located in Columbia, Maryland. Defendant Columbia Union Conference of Seventh-day Adventists ("CUC"), a Maryland nonprofit entity or association, is a regional conference association located in Columbia, Maryland. CUCA/CUC, at all relevant times, owned, operated, managed, supervised, supported and/or controlled and promoted to the Seventh-day Adventist community, approximately 84 schools, including but not limited to Miracle Meadows, consisting of 64 K-8 schools, 10 K-10 schools, 8 secondary schools, and 2 colleges. At all times relevant, CUCA/CUC was an agent of Defendants SDNA/NAD.

5.    Mountain View Conference of Seventh-Day Adventists (hereinafter "MVC"), a West Virginia entity and agent of Defendants SDNA and CUCA, is a regional conference association of SDNA and CUCA, serving as a regional headquarters for SDNA located in West Virginia. MVC territory includes the western counties of Maryland (Garrett and Allegheny), and

---

[1] http://www.nadadventist.org/article/1073742477/ministries-services/ministries/education
[2] Id.

all of West Virginia with the exception of 3 counties in the eastern panhandle. At all relevant times, MVC, along with SDNA, NAD, CUC and CUCA, created, owned, operated, managed, supervised, supported and/or controlled and promoted to the Seventh-day Adventist community approximately 7 schools in CUCA/CUC conference, including, but not limited to, Miracle Meadows.

6.    Miracle Meadows School, Inc. (hereinafter "Miracle Meadows") is a West Virginia Corporation and an agent and ministry of Defendants SDNA, NAD, CUC, CUCA, and MVC. It operated as a Seventh-Day Adventist boarding school located in Salem, West Virginia until it was closed in 2014 for violations of West Virginia law as described herein. At all times relevant, Defendant Miracle Meadows was an agent of Defendants SDNA, NAD, CUC, CUCA, and MVC. Miracle Meadows was operated, managed, supervised, controlled, supported, and promoted by SDNA, NAD, CUC, CUCA, and MVC.

7.    At all relevant times, all Defendants were acting by and through their duly authorized, actual, and/or apparent agents, servants, and employees, in particular the staff and administration of Miracle Meadows, acting within the course and scope of their actual and/or apparent agency and/or employment, for whom all Defendants are vicariously liable under Maryland law.

### JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter and all parties pursuant to *Md. Code* §§ 6-102 of the *Courts and Judicial Proceedings Article ("C.J.P.")*.

7.    Pursuant to *Cts.& Jud. Proc*. § 6-201, venue in Howard County is proper. Defendants CUCA and CUC both reside in Howard County, Maryland, and Defendants SDNA, NAD, and MVC regularly conduct business in Howard County, Maryland, on a regular basis.

8.     At all relevant times, all Defendants were doing business in Maryland, generally, and Howard County, Maryland, specifically. At all relevant times, the actions of each and every Defendant further discussed throughout this Complaint subjected them to the jurisdiction of this Court as they conducted regular, continuous, and systematic business throughout Maryland and in Howard County, Maryland, specifically.

9.     At all relevant times, Defendants SDNA, NAD, CUC, CUCA, and MVC controlled Miracle Meadows. These Maryland-based Defendants actually paid some Miracle Meadows students' tuition, paid some students' travel expenses to get to and from Miracle Meadows (including students who were Maryland residents) and provided other financial support directly to Miracle Meadows. These Maryland-based Defendants also directly provided staff to help run Miracle Meadows, including sending "interns" from Seventh-Day Adventist colleges located in Maryland to Miracle Meadows.

10.     Over the several decades that Miracle Meadows was in operation, students attending Miracle Meadows were required by Maryland-based Defendants SDNA, NAD, CUC, CUCA, and MVC to travel to Seventh-Day Adventist churches located in Maryland, including those in Howard County, to sing, perform, participate in other promotional exhibitions, and ultimately showcase what these Defendants portrayed as the success of their Miracle Meadows program. These Maryland-based Defendants paid for or subsidized the travel accommodations for the students it required to participate in these business ventures.

11.     Further, over several decades that Miracle Meadows was in operation, the staff of Miracle Meadows regularly and routinely traveled to Maryland and to Howard County, Maryland, specifically to pick up Maryland residents and transport them back to their boarding school in West Virginia.

12.    Maryland-based Defendants SDNA, NAD, CUC, CUCA, and MVC marketed Miracle Meadows as their boarding school for children that suffered from Reactive Attachment Disorder ("RAD") and other behavioral disorders and issues and the place for parents and guardians to send their "troubled" children to be "cured" through religion and the religious-based policies and practices these Defendants employed at Miracle Meadows.

13.    Maryland-based Defendants SDNA, NAD, CUC, CUCA, and MVC also directed the efforts of Miracle Meadows Director Susan Gayle Clark, their agent, to marked Miracle Meadows to Maryland citizens and across the United States at Seventh-Day Adventist conventions nationwide and via the 3ABN television network operated by these Maryland-based Defendants. These Maryland-based Defendants also utilized their own periodical, the Columbia Union Visitor—based in Columbia, Maryland—to promote features on Miracle Meadows, its employees, staff, and students in order to market to and direct children in Maryland and across the United States to Miracle Meadows.

14.    Over several decades that Miracle Meadows was in operation, its Board was routinely comprised of individuals with official roles in the SDA Church, with at least one Board Member providing substantial funding to the SDA in Maryland and Seventh-Day Adventist colleges in Maryland which directed operations to Miracle Meadows.

15.    This action is timely brough pursuant to the *Maryland Child Victims Act of 2023*, *Cts. & Jud. Proc*. § 5-117. Plaintiff is seeking all damages available pursuant to the *Maryland Child Victims Act of 2023* and under Maryland law for the injuries caused to Plaintiff by the acts and omissions of the Defendants more fully discussed herein.

## OPERATIVE FACTS

6

16.    This action arises as a result of multiple occurrences of inappropriate touching, grooming, sexual assault, negligence, invasion of privacy, negligent infliction of emotional distress, and other wrongful acts suffered by Plaintiff as a student at the Miracle Meadows School situated in Salem, West Virginia.

17.    At all relevant times, Miracle Meadows was an agent and ministry of Defendants SDNA, NAD, CUC, CUCA, and MVC operating, as they claim, a Christian boarding school "for boys and girls, 6 to 17 years of age, who are experiencing difficulty relating in a positive way to family, school, church, or community. Specifically, Miracle Meadows School enrolled boys and girls who were experiencing defiance, dishonesty, school failure, trouble with the law, spiritual disinterest, poor social skills, adoption issues and other behavior harmful to them and to others."[3]

18.    Upon information and belief, Susan Gayle Clark was the Director of Miracle Meadows at all relevant times and in that capacity, and in her other capacities identified herein, exercised management and supervisory authority at Miracle Meadows and over the children enrolled there, including Plaintiff, and was acting as an agent of SDNA, NAD, CUC, CUCA, and MVC.

19.    On or about February 12, 2016, Susan Gayle Clark pled guilty to child neglect creating risk of injury, failure to report and obstruction of an officer relating to her failure to report numerous instances of child abuse that she knew was occurring at Miracle Meadows. Clark was sentenced to six months for child neglect and abuse and sexual abuse creating risk of injury, and 30 days for failure to report, as well as five years of probation in which she is not allowed to leave the state or have contact with children under the age of 18 not related to her.

---

[3] *See* A screen shot of Miracle Meadow's website (www.miraclemeadows.org) from March 2016, attached hereto as Exhibit "A"

20.     Defendants and their agents had a duty to maintain close supervision for the safety and security of the children enrolled at Miracle Meadows and for the safe operation of Miracle Meadows, as well as supervision of employees/agents at Miracle Meadows.

21.     Defendants, and their agents, promoted and advertised Miracle Meadows throughout this Country, including specifically throughout the State of Maryland, in an effort to have unsuspecting parents of the atrocities that were being committed at Miracle Meadows, who were in large part, members of the Seventh-day Adventist organization, send their children to Miracle Meadows. Moreover, SDNA, NAD, CUC, CUCA and/or MVC through their local churches and others shared funds paid for numerous Seventh-day Adventist children to attend Miracle Meadows.

22.     The employees and/or agents of Miracle Meadows, operating as all Defendants' agents, had obligations to act *in loco parentis* for the minor children, including Plaintiff at Miracle Meadows.

23.     Defendants held obligations to notify the Maryland Department of Human Services as well as the West Virginia Department of Health and Human Services and report that a minor child had been or may be abused or neglected, as had separately occurred on repeated separate occasions.

24.     Defendants had a duty to the minor children in their custody to maintain a safe and secure environment free from physical, sexual, and emotional abuse, all of which occurred to Plaintiff on separate occasions.

25.     Plaintiff was enrolled as a student at Miracle Meadows from approximately 1999 through 2002. During that time Plaintiff suffered separate acts of mistreatment on separate occasions, including, child abuse, child sex abuse, quarantine, malnutrition, child labor law

violations of West Virginia statutes, mistreatment, failure to educate, and causing physical harm and emotional distress and mental anguish and which occurred at separate times and to multiple minor children, caused by separate administrative and staff conduct.

26.     Plaintiff suffered injuries and abuse while residing at Miracle Meadows beginning in approximately 1999 until 2002, from approximately age fourteen (14) years-old until she attained the age of eighteen (18) years.

27.     During the approximately four years Plaintiff was a student at Miracle Meadows, numerous minor children, including Plaintiff, suffered significant and continuous physical, sexual, and emotional abuse and neglect as separate acts on separate occasions.

28.     Numerous children at Miracle Meadows, including Plaintiff, were subjected to malnourishment, isolation, corporal punishment, starvation, and physical abuse as separate acts on separate occasions.

29.     Numerous children at Miracle Meadows, including Plaintiff, were forced at separate times to perform manual labor on a regular basis and were not paid for their service in violation of West Virginia Child Labor Laws.

30.     During Plaintiff's time at Miracle Meadows, numerous children, including Plaintiff, suffered significant physical, sexual and/or emotional abuse and/or neglect at separate times, separate locations, and in separate ways. Plaintiff was at multiple times subjected to separate acts of mistreatment, child abuse, child sex abuse, quarantine, child labor law violations of West Virginia statute, mistreatment, and failure to educate, all of which causing physical injury, vocational impairment, emotional distress and mental anguish.

31.     Numerous children, including Plaintiff, were "quarantined", a process wherein children would be locked inside a 4 x 10 or 5 x 8 room alone for extended periods of time with

nothing more than a bucket in which to urinate and defecate. Often times these children were not even provided with toilet paper, thus requiring the children to either remain in their own filth or use their clothing to try and clean themselves.

32.    When in "quarantine," minor children would often get nothing more to eat in a day than bread and fruit for one meal and rice and beans for another. Children would also be required to memorize bible verses or write out a whole bible chapter, and if they got any part of it wrong, they would have to stay for a longer time in "quarantine."

33.    Plaintiff was quarantined on approximately one hundred (100) separate occasions over her time at Miracle Meadows, including one continuous period of two (2) weeks.

34.    Plaintiff was physically abused at Miracle Meadows on multiple occasions, including but not limited to instances where Plaintiff was subjected to physical restraint by staff members, including being placed in "passive" restraint on multiple occasions. On one occasion, Plaintiff was placed into passive restraint by both a male and female staff member who sat on her and shoved her face into gravel, causing gravel to become embedded in her skin on her arms and face. On another occasion, Plaintiff was placed into passive restraint by a female staff member. These actions caused Plaintiff physical pain, injury, and discomfort.

35.    Through Miracle Meadows, Defendants employed aggressive and abusive policies at Miracle Meadows as separate acts that violated the health and safety of the minor children residing there. Prominent church officials, through their membership and participation on the boards of directors of the Defendants, knew or should have known about the policies of Miracle Meadows and did nothing to curb the abusive polices and the abusive actions of their agents and employees at Miracle Meadows.

36.     Prominent church officials, through their participation on the boards of MMS and MVC knew or should have known about the abusive MMS practices and policies and did nothing to curb said abusive practices and policies.

37.     Numerous children at Miracle Meadows, including Plaintiff, were sexually and/or physically assaulted, neglected and/or abused by Miracle Meadows staff, at separate times, at separate locations, and under separate circumstances.

38.     In fact, Plaintiff was sexually abused as a student at Miracle Meadows on multiple occasions. Plaintiff was raped by Miracle Meadows staff member Jonathan Grullon on one occasion in approximately 2000 when she was approximately fifteen (15) years old. The rape occurred in the girls' dormitory, in Plaintiff's bed, during the middle of the day when other students were away. At the time, Plaintiff was in her bed sleeping and recovering from being sick when she felt someone touching her. Plaintiff awoke to see Grullon near her bed. Grullon then climbed on top of Plaintiff and she attempted to push Grullon away as he put one hand over her mouth and began to grope at her breasts with the other hand before forcibly pushing Plaintiff's shorts down over her knees. Plaintiff became unable to stop Grullon as he penetrated her vagina with his penis. Two days after having been raped, Plaintiff told Miracle Meadows staff member Ms. Herbert what had happened, who did not believe Plaintiff, claimed that she was lying, and threatened her with being placed into quarantine if she continued to report her abuse.

39.     Numerous staff at Miracle Meadows, and employees and agents of Defendants, were informed of and/or had knowledge that children at Miracle Meadows, including, but not limited to, Plaintiff, were being sexually, physically, and/or emotionally abused and neglected on numerous but separate times, but chose to do absolutely nothing to prevent said abuse or neglect,

11

nor report it pursuant to their obligations to do so pursuant to the provisions of *Maryland Code, Family Law, § 5-704 (2024)* and *W.Va. Code* §49-2-803(a).

40.     In addition to food and water deprivation, exposure to unhygienic conditions, isolation, corporal punishment, physical, sexual and emotional abuse and neglect, Defendants, through Miracle Meadows, also committed educational neglect in that their instructions and curriculum failed to meet appropriate educational standards for the State of West Virginia.

41.     Defendants failed to adequately and/or sufficiently staff the facilities and monitor the staff for the safety and security of the children enrolled and living at Miracle Meadows.

42.     Defendants individually and/or by and through their employees and/or agents, took affirmative steps to maintain the abusive and neglectful atmosphere at Miracle Meadows by choosing not to report the continuous abuse and neglect that was occurring, as required by *Maryland Code, Family Law, § 5-704 (2024)* and *W.Va. Code* §49-2-803(a).

43.     At all times relevant, Defendants breached their duty to exercise appropriate and safe dominion, control, oversight and proper management of Miracle Meadows, thereby causing significant injury and damages to Plaintiff.

44.     Defendants' combined conduct, through financial support, program and policy design and implementation, lack of supervision, and a culture of silence and secrecy, combined with acts of cruelty, endangered the health, safety and welfare of children participating in the claimed ministry of Miracle Meadows, an agent of SDNA, NAD, CUC, CUCA, and MVC.

45.     Defendants' combined conduct in promoting Miracle Meadows from their Maryland headquarters, charging tuition without providing an education, providing financial support, enacting program designs, negligence in supervision, and a culture of silence and secrecy endangered the health, safety, and welfare of minor children participating in the ministries of

Miracle Meadows. The conduct of Defendants is the direct and proximate cause of injuries to Plaintiff, including the direct and proximate cause of the sexual, physical, psychological, and emotional abuse she was made to endure.

46.    All Defendants aided, abetted, and concealed all of the abuse suffered by Plaintiff as detailed above and specifically aided, abetted, and concealed the sexual abuse of Plaintiff when she was a minor child at Miracle Meadows.

47.    As a result of the abuse at Miracle Meadows, Plaintiff suffers from significant physical, vocational, and emotional harm that will continue for the rest of her life

## COUNT I
## NEGLIGENCE

48.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

49.    Defendants owed a legal duty to Plaintiff of reasonable care and were negligent, reckless, and careless in repeatedly breaching this duty and on numerous separate occasions, separate circumstances, separate locations, and by separate actions.

50.    Defendants negligently and carelessly failed to adopt and implement adequate policies and procedures to protect Plaintiff from abuses and for other separate abuses.

51.    Defendants failed to follow or institute basic policies concerning the safety and care of children in preaching their ministries.

52.    Defendants did not take reasonable steps to prevent or prohibit child abuse, child sex abuse, mistreatment, or neglect at Miracle Meadows.

53.    Despite being entrusted to care for Plaintiff, Defendants failed to inform parents or authorities of child abuse incidents and through lies and deceit obstructed proper investigations.

54.    Defendants also negligently failed to report incidents of child abuse or neglect to appropriate human services authorities, including the West Virginia Department of Health and Human Resources, as required by the provisions of *Maryland Code, Family Law, § 5-704 (2024)* and *W.Va. Code* §49-2-803(a).

55.    Each and every Defendant had a duty to exercise reasonable care to ensure the safety and protect the health and welfare of the Plaintiff and provide a safe environment through the housing facilities, administration, and staff of Miracle Meadows. Defendants negligently, carelessly, and recklessly breached their duties to act and use reasonable care to ensure the safety and protect the health and welfare of Plaintiff in that Defendants knew or should have known Plaintiff was being subjected to child abuse, sexual abuse, and mistreatment, as described herein.

56.    Defendants knew, had reason to know, or was otherwise on notice of the unlawful conduct of Miracle Meadows staff, employees, and administrators, who were at all relevant times agents of all Defendants, and failed to protect the safety of children in their care, including Plaintiff. Defendants failed to take reasonable steps and failed to ensure that reasonable safeguards were implemented to prevent acts of unlawful sexual abuse and to prevent or avoid placement of Plaintiff in functions or environments in which she would be endangered and abused.

57.    Furthermore, at no time during the periods of time alleged did Defendants ensure that procedures were in place or a system was in place to provide for the adequate supervision and monitoring of their agents, employees, and staff to ensure that children, including Plaintiff, were not abused.

58.    Unfortunately, the incidents of abuse suffered by Plaintiff were not unique to her. Through the years Miracle Meadows was operating, incidents of sexual abuse by staff were prevalent. Defendant's acquiescence and silence with respect to the known, or reasonably

14

knowable, activities of staff and employees of Miracle Meadows constituted a course of conduct through which acts of sexual violence and mental torment and the violation of the sanctity of children were condoned, approve, and effectively authorized.

59.    As a proximate and direct result of Defendant's negligence and/or reckless conduct described herein, Plaintiff was harmed and has sustained emotional injuries, embarrassment, mental anguish, pain and suffering, and loss of enjoyment of life and life's pleasures.

60.    Plaintiff has been and will likely into the future be caused to incur medical expenses and she may likely incur a loss of earning capacity in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to exceed Seventy-Five Thousand Dollars ($75,000.00) for economic and non-economic damages, plus all costs and expenses of this litigation, plus post judgment interest at the legal rate from the date of the judgment.

## COUNT II
## NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

61.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set for hereinafter.

62.    Defendants negligently failed to ensure that their agents, including any and all directors, teachers, spiritual leaders, mentors, staff, employees, and other individuals having access to children at Miracle Meadows had or received adequate training, experience, and supervision to protect the children from harm which occurred as alleged herein.

63.    Defendants did not exercise reasonable care in hiring, training, and/or supervising of employees and others having access to minor children at Miracle Meadows, including

specifically, Grullon, by virtue of their agency, employment, and/or affiliation with Miracle Meadows and Defendants.

64.    Defendants negligently failed to ensure that meaningful background checks and/or investigations were conducted when hiring Miracle Meadows employees, agents and/or staff.

65.    Defendants negligently retained agents and/or employees on the Miracle Meadows staff, including but not limited to Grullon, and within the Miracle Meadows administration they knew, should have known, or had reason to know were unfit, dangerous, incompetent, and otherwise incapable of fulfilling Defendants' responsibility to safety care for and supervise children in the care and custody of Defendants, including Plaintiff.

66.    Defendants negligently retained agents and/or employees on the Miracle Meadows staff, including but not limited to Grullon, and within the Miracle Meadows administration they knew, should have known, or had reason to know were abusing, neglecting, and harming children, including Plaintiff.

67.    The breach of duty and negligence by the Defendants proximately caused damage to Plaintiff, including past and future economic loss, medical expenses, physical and mental pain, anguish and suffering.

68.    As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to exceed Seventy-Five Thousand Dollars ($75,000.00) for economic and non-economic damages, plus all costs and expense of this litigation, plus post judgment interest at the legal rate from the date of the judgment.

<u>**COUNT III**</u>
**CIVIL CONSPIRACY**

69.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth herein.

70.     Defendants and their agents engaged in a civil conspiracy to protect their common financial interests and status in their religious-based community, to protect their wrongful activities while operating and supporting a religious-based boarding school which required certifications from state school and social welfare regulators, to protect their financial interest in enrollment or placement of students, and in receiving tuition payments, in receiving gifts, donations, grants, loans and other forms of monetary or financial benefit as well as other benefits to themselves, including gaining access to children for sexual purposes.

71.     Each and every Defendants and their agents conspired with one another over a number of years, beginning at least in December of 2000 and continuing until at least August of 2014, when the State of West Virginia closed Miracle Meadows involuntarily, to conceal child abuse, sex abuse, and mistreatment of children. At the same time, they acted in concert to promote and market to members of the Seventh-day Adventist Church in Maryland and throughout the United States of America, and to the general public, as well as educational and child welfare regulatory authorities, the success brought about by the methods the Defendants employed at Miracle Meadows.

17

72.    Defendants' conspiracy of concealment and acting in concert with each other to promote Miracle Meadows as a Seventh-Day Adventists school, knowing child abuse and child sexual abuse and mistreatment were ongoing there, beginning in December of 2000, or before, and continuing until August of 2014, or later—at which time Miracle Meadows was involuntarily closed—was for the purpose of benefitting themselves financially and protecting them from investigation of their wrongdoing.

73.    Because Defendants engaged in the civil conspiracy herein described, they are liable for the acts, omissions, and tortious conduct of one another, irrespective of whether they specifically engaged in said acts, omissions, and tortious conduct.

74.    Following the West Virginia Supreme Court of Appeals' decision of December 2000 confirming that child abuse, child sex abuse, and mistreatment occurred at Miracle Meadows, Defendants conspired and combined to protect the wrongful conduct of Miracle Meadows and did all they could to promote Miracle Meadows and Seventh-Day Adventist boarding school education and by agreement, explicitly or implicit, did nothing to prevent further harm to students from occurring at Miracle Meadows or report the authoritative judicial determination of Miracle Meadows' wrongful conduct to appropriate authorities, the public, and to those attending the school and their parents.  In fact, the Defendants continued on the same course for the next fifteen years.

75.    Defendants engaged and acted in concerted activity to conceal the truth of child abuse, mistreatment, and child sexual abuse at Miracle Meadows, which was known or should have been known, to those Defendants, because it was published in an opinion of the West Virginia Supreme Court of Appeals and by the investigations of the State of West Virginia and the Prosecuting Attorney of Harrison County, West Virginia.

18

76.     Each and every Defendant engaged in a civil conspiracy to conceal and not provide the truth and facts of the conduct of Miracle Meadows, committed in the name of and in furtherance of the goals of the Defendants—the Seventh-Day Adventist organizations joined herein—and to do so when Miracle Meadows was violating West Virginia and Maryland law concerning child abuse, sexual abuse, child labor law, child wages, and mistreatment of children. In doing so, Defendants conspired in concerted acts to accomplish an unlawful purpose or to accomplish some purpose not in itself unlawful by unlawful means and, in effect, Defendants thereby shared a common plan with the perpetrators, including Miracle Meadows, Susan Gayle Clark, Jonathan Grullon, and other abusive and predatory staff of Miracle Meadows—who, at all relevant times, were agents of each and every Defendant.

77.     As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to exceed Seventy-Five Thousand Dollars ($75,000.00) for economic and non-economic damages, plus all costs and expenses of this litigation, plus post judgment interest at the legal rate from the date of the judgment.

**COUNT IV**
**VICARIOUS LIABILITY**

19

78.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

79.     Defendants are vicariously liable to Plaintiff for compensatory and punitive damages caused by the acts, omissions, and tortious conduct of their agent Miracle Meadows, including its agents and employees.

80.     Defendants, through Board members of the CUCA/CUC and MVC Association of Seventh-Day Adventists had knowledge of past and current investigations of Miracle Meadows by the State of West Virginia, and the wrongful conduct which had occurred and was occurring, had knowledge of the Supreme Court of Appeals of West Virginia's decision determining and concluding child abuse, child sexual abuse, mistreatment, and other horrific acts had occurred at Miracle Meadows to students attending, including Plaintiff, and knowledge of those horrific acts of child abuse, child sexual abuse, and mistreatment of minor children, including Plaintiff, at Miracle Meadows and for whose health, safety, and education they held a fiduciary duty and responsibility to protect and safely educate Plaintiff, and other minor children enrolled at Miracle Meadows.

81.     Despite such knowledge, the entities, persons, and agents of the Defendants joined others in approving and using the quarantine rooms and hand cuffing as routine and regular punishment for unspecified, minor, arbitrary reasons that were cruel and purposefully harmful to Plaintiff and other minor students attending Miracle Meadows as well as aiding abetting and concealing the sexual abuse of Plaintiff and others at Miracle Meadows.

82.     Defendants, by and through their contact with Plaintiff, as described above intentionally committed multiple acts of extreme and outrageous conduct which caused severe

emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiff in an extreme, outrageous and harmful manner.

**WHEREFORE,** Plaintiff demands judgment against Defendants an amount to exceed Seventy-Five Thousand Dollars ($75,000.00) for economic and non-economic damages, plus all costs and expenses of this litigation, plus post judgment interest at the legal rate from the date of the judgment.

## COUNT V
## FAILURE TO WARN

83.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

84.    At all times material hereto, Defendants owed a duty to Plaintiff and the public to warn about Miracle Meadow staff and employee misconduct when they knew, or should have known, that their agents and employees posed a risk to all persons, and in particular, to minor children, including Plaintiff.

85.    Defendants breached their duty to warn that Miracle Meadows staff and employees posed a risk of harm. Defendants failed to exercise the reasonable care, skill, and diligence of an ordinarily prudent boarding school would in warning parents and the public of the risks posed by said staff and employees.

86.    No negligence on the part of the Plaintiff contributed to the happening or the occurrence.

87.    Plaintiff's injuries and damages as recited herein occurred directly and were proximately caused by Defendants' breach of duty to warn as described herein.

88.    As a direct and proximate result of Defendants' failure to warn the public and Plaintiff specifically, Plaintiff suffered serious injury, has required medical care and attention, has suffered mental anguish, severe pain, and agony as a result of the occurrence, and was otherwise injured and damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to exceed Seventy-Five Thousand Dollars ($75,000.00) for economic and non-economic damages, plus all costs and expenses of this litigation, plus post judgment interest at the legal rate from the date of the judgment.

Respectfully submitted,

*/s/  Brenda Harkavy            06/11/2025*
Brenda Harkavy, Esq. #1206200099
**LAFFEY BUCCI D'ANDREA**
**REICH & RYAN LLP**
1100 Ludlow St, Suite 300
Philadelphia, Pennsylvania 19107
(215) 399-9255
cvgdteam@laffeybucci.com
*Attorneys for Plaintiff*

Date: June 11, 2025

## JURY DEMAND

Plaintiff elects to have all issues raised herein tried by a jury.

By: */s/  Brenda Harkavy*
Brenda Harkavy

22